1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC BRYANT,

                Petitioner,

  vs.

M.C. KRAMER,

                Respondent.

_____/

No. C 02-2942 WHA (PR)

**ORDER GRANTING MOTIONS FOR RECONSIDERATION AND TO AMEND; VACATING ORDER AND JUDGMENT OF OCTOBER 21, 2009; DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING REQUEST FOR CERTIFICATE OF APPEALABILITY**

(Docket Nos. 95, 96, 102, 103)

## INTRODUCTION

Petitioner, proceeding pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254. At the time he filed the petition, he was a California prisoner, but has was released from prison in approximately February 2007. On October 21, 2009, the case was dismissed because petitioner did not file a second amended petition, as ordered on September 2, 2009. For the reasons discussed below, the motion for reconsideration (Docket No. 95) is **GRANTED**, the motion to amend the petition (Docket No. 103) is **GRANTED**, the petition is **DENIED** on its merits, and petitioner's motions for a certificate of appealability (Docket Nos. 96 & 102) are **DENIED**.

## STATEMENT

**A.  STATE COURT PROCEEDINGS**

In 2000, petitioner was convicted in Santa Clara County of three counts of inflicting corporal injury on the mother of his children (Cal. Pen. Code § 273.5(a)), and one count of threatening to commit a crime resulting in death or great bodily injury (Cal. Pen. Code § 422).

He was sentenced to a term of five years and eight months in state prison.

On August 20, 2001, the California Court of Appeal affirmed the conviction and sentence, and denied a habeas petition in a separate order (Exh. 4). The California Supreme Court denied the petition for direct review on November 20, 2001, and denied the petition for a writ of habeas corpus on December 12, 2001 (Exhs. 8, 9). Petitioner's subsequent petitions for habeas relief from the state courts were denied.

**B.    FEDERAL COURT PROCEEDINGS**

On June 19, 2002, petitioner filed a petition setting forth six claims for relief. On September 5, 2002, respondent was ordered to show cause why the petition should not be granted. On January 10, 2003, respondent answered, contending that some of the claims were not exhausted and that the claims were without merit.

On January 8, 2003, petitioner filed a motion to amend the petition "to delete the unexhausted claim and assert the exhausted claim" (Docket No. 19). On January 27, 2003, petitioner filed another motion to "to immediately refile the habeas petition with only exhausted claims" (Docket No. 25). In these motions, petitioner set forth claims that he indicated he wanted to add to the petition, which claims were different than those raised in the original petition. On February 5, 2003, the motions, construed as motions to amend the petition, were granted, and petitioner was given the opportunity to request a stay of this matter while he exhausted any unexhausted claims in state court. On February 24, 2003, petitioner filed a notice that he did not want such a stay, and on July 3, 2003, respondent was ordered to show cause why the petition, as amended by the new claims, should not be granted. The order to show cause identified six claims gleaned from petitioner's two motions to amend, one of which was dismissed for failure to allege a violation of federal law.

On July 21, 2003, petitioner filed an "objection" to the order to show cause on the grounds that the listed claims was incomplete; he identified eight purportedly exhausted claims that he wanted to raise, and three unexhausted claims that he wanted to "delete" (Docket No. 39). Because of the confusion and impracticality of having claims raised in multiple documents, on July 28, 2003, petitioner was ordered to file a final amended petition setting

United States District Court

For the Northern District of California

forth all the claims he wanted considered.  He did so on September 3, 2003, filing an amended petition setting forth eight claims (Docket No. 43), and on September 9, 2003, respondent was ordered to show cause why the petition should not be granted on the basis of these eight claims.

On February 6, 2004, respondent filed an amended answer arguing that the eight claims were without merit, that six issues, raised in two of petitioner's claims, were not exhausted, and that certain other claims were untimely.  On February 27, 2004, petitioner filed a motion to stay in order to exhaust, but he did not identify the claims he would be exhausting or whether he would exhaust any new claims.  Consequently, the motion for a stay was denied on May 26, 2004.  Petitioner had filed a traverse, and on March 11, 2005, the court found that the traverse and other filings did not adequately address the exhaustion issues raised by respondent. Petitioner was granted the opportunity to file a supplemental traverse to address this issue, and he did so on March 16, 2005.

On September 7, 2005, the court found that petitioner had not exhausted five issues in the amended petition, and found a sixth one had been withdrawn.  Petitioner was given the option of deleting the unexhausted issues from the amended petition and proceeding with the claims he had exhausted, or of seeking a stay in order to exhaust.  On September 21, 2005, he requested a stay in which he listed eleven (misnumbered as ten) claims that he wanted to exhaust (Docket No. 80).  This included seven new claims plus four of the five unexhausted issues petitioner had set forth in the amended petition.  Petitioner stated that he wanted to delete the other unexhausted issue from the amended petition as well as the issue that had been deemed withdrawn.  The stay was granted the next day.

On November 3, 2005, petitioner filed a motion "to lift stay and to amend the federal petition to include the unexhausted issue" (Docket No. 82).  In this motion, petitioner listed eleven claims (again misnumbered as ten) that he had exhausted (*see* Docket No. 82, Attachment to Exh. A at 3).  He did not, however, indicate what claims he wanted to amend the petition to add.  Consequently, on April 6, 2006, the motion to amend was denied, and petitioner was advised that if he wanted any newly-exhausted claims to be considered, he could renew his request to amend his federal petition provided that he specified clearly the claims he

**United States District Court**
For the Northern District of California

1   wanted to add.  On April 12, 2006, petitioner filed a motion "to dismiss" his request to amend

2   (Docket No. 85), stating that he "only wants to present the 10 exhausted issues."  These two

3   statements were contradictory in that the operative petition, the amended petition filed

4   September 3, 2003, only had eight claims and would have to be amended if petitioner wanted to

5   pursue ten claims.  In addition, petitioner did not identify the ten claims he wanted to pursue.  If

6   petitioner was referring to the eleven claims (misnumbered as ten claims) in his motions to stay

7   and to amend, then further amendment would clearly be required because that list included

8   seven new claims and omitted six claims from the operative amended petition.

9          On September 2, 2009, as the claims that petitioner wanted to pursue could not be

10  discerned from the filings received, petitioner was ordered to file a second amended petition

11  setting forth a definitive list of all of the exhausted claims he wished to present.  He was

12  cautioned that his failure to do so within thirty days would result in the dismissal of his case.

13  Because considerable time had passed since petitioner had communicated with the court, and

14  because he had not been clear as to which claims he wished to present, petitioner was also

15  ordered to notify the court within thirty days that he continued to intend to prosecute the case.

16  On September 29, 2009, the order of September 2 was returned by the postal service as

17  undeliverable because petitioner was not located at the last address he provided to the court.

18         On October 13, 2009, petitioner filed a letter to the court inquiring into the status of the

19  case (Docket No. 93).  On October 21, 2009, the court issued an order construing the letter of

20  inquiry as a notice of intent to prosecute, but nevertheless dismissed the case because petitioner

21  did not file a second amended petition in accordance with the September 2, 2009 order (Docket

22  No. 91).  On November 2, 2009, petitioner filed another letter inquiring into the status of the

23  case (Docket No. 94).  On November 16, 2009, he filed a notice of change of address and

24  motion for reconsideration of the dismissal order (Docket No. 95).  Petitioner also filed another

25  "request to amend the petition" and notice of intent to prosecute, dated November 16, 2010

26  (Docket No. 103)[1], in which he listed the exhausted claims that he wants to pursue.

27

28         [1]The proof of service indicates that this document was mailed to the court on November 13, 2009,
    although it was not filed until May 18, 2010, apparently due to clerical error.

4

On November 20, 2009, petitioner filed a notice of appeal and a request for a certificate of appealability of the order of dismissal (Docket Nos. 96), a duplicate of which, dated by petitioner on November 20, 2009, was filed on May 19, 2009 (Docket No. 102).

## ANALYSIS

### A.    MOTIONS FOR RECONSIDERATION AND TO AMEND

Petitioner has filed a motion "to reconsider" the dismissal of this case. Rule 60(b) of the Federal Rules of Civil Procedure provides for reconsideration where one or more of the following is shown: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) voiding of the judgment; (5) satisfaction of the judgment; (6) any other reason justifying relief. Fed. R. Civ. P. 60(b); *School Dist. 1J v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). Subparagraph (6) requires a showing that the grounds justifying relief are extraordinary; mere dissatisfaction with the court's order or belief that the court is wrong in its decision are not adequate grounds for relief. *Twentieth Century - Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981).

The case was dismissed because petitioner failed to file a second amended petition within thirty days of the order of September 2, 2009, as he had been ordered. He had been ordered to file the second amended petition because it could not be discerned from petitioner's prior filings what claims he intended to pursue. In the motion for reconsideration petitioner states that he did not know he had to file a second amended petition because he had not receive the order of September 2 until after the case had already been dismissed. This is possible as the order was returned as undeliverable. In addition, at approximately the same time as filing for a motion for reconsideration, petitioner sent the court a "request to amend the petition" (Docket No. 103) setting forth the seven exhausted claims that he wants to pursue. As petitioner does not appear to have received the order requiring him to file a second amended petition prior to the dismissal, and he promptly filed a definitive list of exhausted claims that he wants to pursue, the motion for reconsideration will be granted, as will the motion to amend.

Because the motion to amend the petition accomplishes what was required of petitioner

United States District Court

For the Northern District of California

1  in the order to file a second amended petition, i.e. it sets forth all of the exhausted claims he

2  wants to pursue in one place, the motion is construed as his second amended petition.  Because

3  petitioner has briefed the claims therein both in the motion and in his many prior filings, and

4  respondent has briefed them in his answer, amended answer and supporting memoranda, and in

5  light of the age of this case, neither an order to show cause nor further briefing are necessary.

6  Rather, the claims can be addressed on their merits at this stage based upon the ample briefing

7  already submitted by the parties.

8  **B.     MERITS**

9      **1.     <u>Standard of Review</u>**

10      A district court may not grant a petition challenging a state conviction or sentence on the

11  basis of a claim that was reviewed on the merits in state court unless the state court's

12  adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

13  unreasonable application of, clearly established Federal law, as determined by the Supreme

14  Court of the United States; or (2) resulted in a decision that was based on an unreasonable

15  determination of the facts in light of the evidence presented in the State court proceeding."  28

16  U.S.C. 2254(d).  The first prong applies both to questions of law and to mixed questions of law

17  and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong

18  applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340

19  (2003).

20      A state court decision is "contrary to" Supreme Court authority, that is, falls under the

21  first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

22  reached by [the Supreme] Court on a question of law or if the state court decides a case

23  differently than [the Supreme] Court has on a set of materially indistinguishable facts."

24  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of"

25  Supreme Court authority, falls under the second clause of Section 2254(d)(1), if it correctly

26  identifies the governing legal principle from the Supreme Court's decisions but "unreasonably

27  applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The federal court on habeas

28  review may not issue the writ "simply because that court concludes in its independent judgment

United States District Court

For the Northern District of California

1  that the relevant state-court decision applied clearly established federal law erroneously or

2  incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support

3  granting the writ.  *See id.* at 409.

4         "Factual determinations by state courts are presumed correct absent clear and

5  convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340 (citing 28 U.S.C. 2254(e)(1)).

6  This presumption is not altered by the fact that the finding was made by a state court of appeals,

7  rather than by a state trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v.*

8  *Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner

9  must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of

10  correctness; conclusory assertions will not do.  *Ibid.*

11         Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination

12  will not be overturned on factual grounds unless objectively unreasonable in light of the

13  evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

14         **2.**      **<u>Issues Presented</u>**

15         Petitioner was convicted of committing acts of violence against Dianne Quintero, the

16  mother of his children, on three occasions, and making a criminal threat against her (Exh. 4 at

17  2-9).  In August 1998, he closed a car window on her arm while she was reaching inside, and

18  then moved the car into reverse (*id.* at 3-4).  On January 16, 1999, petitioner went to Quintero's

19  apartment where, after an argument, he hit Quintero in the face, twisted her wrists, and pushed

20  her so that she fell backwards and hit her head (*id.* at 4).  On May 19, 1999, after another

21  argument at Quintero's apartment, petitioner knocked her over so that she hit her head, and then

22  punched her in the stomach (*id.* at 5).  After she put their children to bed, petitioner took out his

23  belt and whipped her on her thigh twice (*id.* at 6).  Later that evening, after Quintero finished a

24  phone call to her friend, petitioner told her that if she had been talking to the police, they would

25  have had to take her out on a stretcher, and in November 1997, petitioner had threatened to kill

26  or paralyze her if she called the police (*id.* at 3, 6).  Quintero testified in detail about the

27  incidents, and there were several witnesses who testified that Quintero had told them consistent

28  stories of what petitioner had done, and had seen some of the bruises and whip marks that she

sustained.

As grounds for federal habeas relief set forth in his second amended petition (docket No. 103), petitioner asserts that: (1) Section 1109 of the California Evidence Code violates due process; (2) his due process rights were violated when the trial court admitted evidence of prior acts of domestic misconduct, and trial counsel was ineffective in failing to object to the admission of such evidence as more prejudicial than probative; (3) petitioner's due process rights and his right not to incriminate himself were violated when he was denied probation because of his refusal to admit guilt; (4) his Sixth Amendment right to effective assistance of counsel was violated by the trial court's refusal to replace counsel after an irreconcilable conflict had developed; (5) trial counsel was ineffective in failing to present material evidence in petitioner's defense and failing to impeach the complaining witness, and appellate counsel was ineffective in failing to raise this issue on appeal; (6) trial counsel was ineffective in failing to call certain witnesses, and appellate counsel was ineffective for failing to raise the issue on appeal; and (7) his due process rights were violated by the prosecution's knowing presentation of false evidence and by appellate counsel's failure to raise this issue on appeal.

### a.      California Evidence Code Section 1109

Petitioner claims that Section 1109 of the California Evidence Code, pursuant to which evidence of his prior domestic violence was admitted, violates due process.  Section 1109 provides, in relevant part: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."  Cal. Evid. Code § 1109(a)(1).  Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The United States Supreme Court has left open the question whether allowing the admission of propensity evidence violates due process.  *Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991).  Based on the Supreme Court's reservation of this issue as an "open question," the Ninth

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Circuit has held that a petitioner's due process right to avoid the admission of propensity

2   evidence is not "clearly established" as required by AEDPA, *Alberni v. McDaniel*, 458 F.3d

3   860, 866-67 (9th Cir. 2006) (citing 28 U.S.C. 2254(d)(1)), and therefore a state court's rejection

4   of such a claim cannot be grounds for federal habeas relief, *Larson v. Palmateer*, 515 F.3d

5   1057, 1066 (9th Cir. 2008).  Moreover, the Ninth Circuit has held that the federal evidentiary

6   rule allowing propensity evidence does not violate due process because the evidence of the

7   prior offense still is subject to the trial court's balancing test before it is admitted, which

8   provides meaningful review.  *United States v. LeMay*, 260 F.3d 1018, 1031 (9th Cir. 2001)

9   (addressing Federal Rule of Evidence 414 (allowing evidence of prior sexual offenses to show a

10  propensity to commit the charged sexual offense)).  As California's Evidence Code Section

11  1109 requires a similar balancing test under Section 352, it also does not violate due process.

12          Consequently, the state appellate courts' rejection of this claim was not contrary to, or

13  an unreasonable application of, clearly established United States Supreme Court authority.

14          **b.      Admission of Evidence**

15          Petitioner claims that his due process rights were violated when the trial court admitted

16  evidence of his prior acts of domestic misconduct, and trial counsel was ineffective in failing to

17  object to the admission of such evidence as more prejudicial than probative.

18          The charges in this matter were based on acts of domestic violence that occurred in 1998

19  and 1999.  Evidence of petitioner's prior acts of domestic violence, on June 27, 1997 and

20  November 24, 1997, were admitted, and they are described by the California Court of Appeal as

21  follows:

22              On June 27, [Dianna] Quintero asked defendant to attend to the twins
            because they were crying and she was having back problems.  He said, "you do
23          it."  He hit Quintero on the left side of her face and grabbed her by her wrists,
            twisting them.  He also pushed her into some floor speakers and tore up the
24          apartment.  Quintero suffered a sprained wrist and facial contusions.  She called
            the police, but hung up because she was afraid.  When the police responded to
25          the hang-up, she told them what had happened.  She went to the hospital to have
            her injuries treated and told her niece about the incident.  She also got a
26          temporary restraining order [TRO] through family court.

27              Around July 4, defendant came by and told Quintero that they could
            work things out, so they began living again.  However, defendant became more
28          controlling and angry over small things.  After Thanksgiving dinner in 1997,
            they had an argument because defendant wanted to go to Reno to gamble.  The

                                                    9

United States District Court

For the Northern District of California

1    argument continued into the bathroom, and defendant threw Quintero into the
     shower where she chipped her front tooth.  Defendant laughed and told Quintero
2    to stop crying.  He pushed her against the bathroom counter, causing the mirror
     to break.  The toilet seat also broke.  When they returned to the living room,
3    defendant hit her on the left side of her face.  She did not call the police after this
     incident.  Defendant had told her that he would kill her if she ever called the
4    police again.  He said that he would drop her on the head, snap her spine, and
     paralyze her.  She took him seriously, so she was afraid.  She got her tooth
5    repaired many months later.

6    (Exh. 4 at 2-3.)

7         The trial court admitted the evidence pursuant to both Section 1101(b) of the California

8    Evidence Code, as showing a characteristic "method, plan or scheme" that would reveal his

9    intent to commit the charged crimes, and Section 1109 as evidence of a propensity to commit

10   acts of domestic violence (Exh. 2 at 88-89).  The trial court also ruled that the evidence was no

11   more prejudicial than probative under Section 352 (*id.* at 89).  The trial court further gave

12   instructions limiting the evidence to these purposes (*id.* 317-19).  The California Court of

13   Appeal rejected petitioner's claim that the evidence was more prejudicial than probative,

14   finding that its admission was not barred by Section 352 (Exh. 4 at 11).

15        The United States Supreme Court "has not yet made a clear ruling that admission of

16   irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to

17   warrant issuance of the writ."  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).

18   Absent such a ruling from the United States Supreme Court, a federal habeas court cannot find

19   the state court's ruling was an "unreasonable application" of "clearly established federal law"

20   under 28 U.S.C. 2254(d)(1).  *Ibid.* (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).  Under

21   *Holley*, therefore, habeas relief cannot be granted under Section 2254(d)(1) on Petitioner's

22   claims that the admission of overly prejudicial evidence of his prior acts of domestic violence

23   violated his right to due process.  *See id.* at 1101 n.2 (finding that although trial court's

24   admission of irrelevant and prejudicial evidence violated due process under Ninth Circuit

25   precedent, such admission was not contrary to, or an unreasonable application of, "clearly

26   established Federal law" under Section 2254(d)(1), and therefore not grounds for granting

27   federal habeas relief).

28        Even if federal habeas relief were available on a claim that the admission of overly

United States District Court

For the Northern District of California

prejudicial evidence violates due process, the evidence of petitioner's prior domestic violence caused no such violation in this case. Circuit case-law on this issue provides that in order to amount to a due process violation, the admission of evidence must be so arbitrary or prejudicial that the trial became fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). The prior acts of domestic violence were substantially probative of the critical issue of whether petitioner committed the charged acts of domestic violence insofar as it showed his propensity to abuse the victim. As discussed above, it is constitutionally permissible to draw an inference of propensity from the evidence, and it is only if no permissible inferences can be drawn from the evidence that its admission violates due process. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). In addition, the similarity of petitioner's prior attacks against the victim to the charged crimes and their proximity in time made the victim's account of the charged crimes more credible. The risk of prejudice from the evidence was mitigated both by the instructions limiting the jury to the evidence's permissible purposes, which the jury is presumed to follow, *see Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997), and by the fact that the accounts of the prior acts of violence were no more inflammatory than the charged crimes. Under these circumstances, even if habeas relief could be obtained based on a claim that the admission of evidence violated due process, the record indicates that the evidence was not substantially more prejudicial than probative so as to cause a due process violation.

Petitioner's claim that trial counsel provided ineffective assistance in failing to object to the evidence as more prejudicial than probative also fails. To begin with, trial counsel did object that the evidence should not have been admitted under Section 1109 and he was overruled. The trial court specifically ruled that the evidence was more probative than prejudicial under Section 352, and thus any objection on those grounds would have been futile. *See Hebner v. McGrath*, 543 F.3d 1133, 1137 (9th Cir. 2008) (failure to make meritless objection not ineffective); *cf. Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (failure to make meritless motion cannot be ineffective assistance). Moreover, the state appellate court's ruling that the evidence passes the balancing test under Section 352 is a determination of state law that is binding on federal habeas review. *See Hicks v. Feiock*, 485 U.S. 624, 629, 630 n.3

United States District Court

For the Northern District of California

1   (1988).  Finally, for the reasons discussed above, the evidence was not more prejudicial than

2   probative.  As a result, any objection by trial counsel on these grounds must be viewed as

3   meritless, and trial counsel was not ineffective in failing to make it.

4       As the admission of evidence of petitioner's prior domestic violence did not violate due

5   process, and counsel was not ineffective in failing to object to the evidence, the state appellate

6   courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly

7   established United States Supreme Court authority.

8                    **c.    Denial of Probation**

9       Petitioner claims that his due process rights and his right not to incriminate himself were

10  violated when he was denied probation because of his refusal to admit guilt.  The trial court

11  denied petitioner probation and sentenced him to a prison term based on statutory factors,

12  including the nature and seriousness of the crimes, his infliction of emotional and physical

13  injury, his dangerousness to others, and his lack of remorse (Exh. 2 at 390-91).  The California

14  Court of Appeal held that the sentence was proper under state law (Exh. 4 at 15).

15      Generally, a federal court may not review a state sentence that is within statutory limits.

16  *Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987).  A federal court may vacate a state

17  sentence imposed in violation of due process, however, if, for example, a state trial judge

18  imposed a sentence in excess of state law.  *Ibid.*  Here, there is no dispute that the sentence

19  petitioner received was within the state statutory limits, and that the factors cited by the trial

20  court in imposing a prison term instead of probation were authorized under the version of

21  California Rule of Court 414(b) in effect at the time of sentencing.  Furthermore, the state

22  appellate court's finding that the sentence was proper under state law is binding on the court on

23  federal habeas review.  *See Hicks*, 485 U.S. at 630 n.3.  There was also ample evidence at trial

24  to support the trial court's reasons for denying probation.  Petitioner committed substantial

25  emotional and physical injury on the victim, he had a long history of violence against her that

26  caused him to continue to represent a danger to her and to his children, and his continued

27  assertion at sentencing that his conviction was based on "fabrications" demonstrated a lack of

28  remorse.  Petitioner may disagree with the trial court's sentencing decision, but it was not

12

arbitrary and did not violate his right to due process.

Petitioner argues that the denial of probation violated his right against self-incrimination because it was based on his lack of remorse in that he did not confess to the crimes.  The trial court found a lack of remorse based upon petitioner's failure to accept responsibility and continued insistence after conviction that the victim's testimony was fabricated (Exh. 2 at 383, 385).  The denial of probation based upon a defendant's lack of remorse and failure to accept responsibility does not violate the defendant's Fifth Amendment right not to incriminate himself.  *United States v. Hull*, 792 F.2d 941, 943 (9th Cir. 1986); *see United States v. Malquist*, 791 F.2d 1399, 1402-03 (9th Cir. 1986) (sentence may be based upon defendant's lack of remorse).  Based upon this authority, petitioner's Fifth Amendment argument fails.

Accordingly, the state appellate courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court authority.

### d.  <u>Substitution of Counsel</u>

Petitioner claims that his Sixth Amendment right to effective assistance of counsel was violated by the trial court's refusal to replace counsel after an irreconcilable conflict had developed.  Prior to and during trial, petitioner moved on several occasions to substitute appointed counsel.  Each time, the trial court denied these motions after hearing from both petitioner and defense counsel.

A criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing.  *Wheat v. United States*, 486 U.S. 153, 159 (1988).  Nor is he entitled to an attorney that he likes and feels comfortable with him.  *United States v. Schaff*, 948 F.2d 501, 505 (9th Cir. 1991).  Nevertheless, to compel a criminal defendant to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict violates his Sixth Amendment right to counsel.  *Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005).  The inquiry in a federal habeas proceeding is whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client

United States District Court

For the Northern District of California

1    relationship that fell short of that required by the Sixth Amendment." *Schell v. Witek*, 218 F.3d

2    1017, 1024-25 (9th Cir. 2000) (en banc).

3            Petitioner claims that there was an irreconcilable conflict because trial counsel allegedly

4    "falsified" family court transcripts.  The record demonstrates, however, that trial counsel

5    obtained certified transcripts from the family court reporters, and that the transcripts were

6    identical to those obtained by the family court judge (Exh. 2 at 19, 356-57).  Petitioner also

7    alleges that trial counsel did not adequately communicate with him.  The record reflects that

8    counsel and his paralegals met with petitioner on many occasions, that they discussed trial

9    strategy at length, in particular whether petitioner would testify (Exh. 2 at 145-46).  Petitioner's

10   own refusal to talk to counsel and to cooperate with him on certain occasions (*id.* 143-147) does

11   not, without more, require substitution of counsel.  *See Hudson v. Rushen*, 686 F.2d 826, 831

12   (9th Cir. 1982).  The trial court's factual findings that trial counsel did not falsify the state court

13   records and that counsel communicated with petitioner on numerous occasions are reasonably

14   drawn from the evidence in the record.  *See* 28 U.S.C. 2254(d)(2).

15           The remainder of the reasons that petitioner asserts he had an irreconcilable conflict

16   with counsel concern aspects of counsel's performance with which petitioner disagrees, in

17   particular counsel's failure to call certain witnesses and to use certain evidence to impeach the

18   victim.  Breakdowns in communication over decisions as to how to conduct the trial that are

19   committed to the judgment of counsel do not necessitate the substitution of counsel.  *Schell*, 218

20   F.3d at 1026.  In any event, the "ultimate" issue is whether petitioner was deprived of his right

21   to counsel under the Sixth Amendment.  *Id.*  For the reasons discussed below, the alleged

22   deficiencies in counsel's performance asserted by petitioner did not deprive petitioner of

23   effective assistance of counsel under the Sixth Amendment.

24           The record does not establish that petitioner's relationship with counsel had broken

25   down such that the denial of his motions to substitute counsel violated his Sixth Amendment

26   right to counsel.  Consequently, the state appellate courts' rejection of this claim was not

27   contrary to, or an unreasonable application of, clearly established United States Supreme Court

28   authority or an objectively unreasonable determination of the facts.

**United States District Court**
For the Northern District of California

e.     <u>**Ineffective Assistance of Counsel**</u>

In his fifth claim, petitioner asserts that trial counsel was ineffective in failing to present certain evidence to impeach the victim.  In his sixth claim, petitioner contends that trial counsel was ineffective in failing to call certain witnesses.  Petitioner further claims that appellate counsel was ineffective in failing to raise these issues on appeal.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must show: first, that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome.  *Ibid.*  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689.  A difference of opinion as to trial tactics does not constitute denial of effective assistance.  *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available.  *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984).

i.     **Impeachment of Victim**

Petitioner describes a number of different areas in which trial counsel should have introduced evidence from the family court proceedings to impeach the victim.  He claims that trial counsel should have impeached her because on one occasion she mistakenly wrote a note that the date of the whipping incident, which occurred on May 19, 1999, was March 19, 1999.  Counsel explained, reasonably, that he did not pursue this because the police report confirmed the date of the incident as May 19 (Exh. 6 at Exh. C).  Thus her note would likely have been seen an inadvertent mistake made in the aftermath of a traumatic incident, and as such it would not affect her credibility or the overall weight of evidence against petitioner.  Petitioner next

15

1   claims that trial counsel should have cross-examined the victim about her testimony that two

2   calls were made from her apartment on the night of May 19, 1999, with testimony from

3   Elizabeth Garcia, another prosecution witness, that she received two calls from the victim and

4   one from petitioner that night.  It is unclear why the extra phone call from petitioner was

5   significant.  In any event, the telephone records support the victim's testimony because they

6   show only two calls from her apartment that night (Exh. 2 at 229-32).  As a result, trial counsel

7   had no reasonable basis to cross-examine the victim about the number of phone calls even if

8   there was any point in doing so.

9          Petitioner also alleges that counsel should have used the victim's application for a

10  temporary restraining order in the family court because it allegedly contains three false

11  statements.  First, petitioner he claims that she lied about him closing the car window on her

12  arm and going into reverse, which she averred in both her TRO and in her trial testimony (Ex. B

13  at 129-33).  Petitioner claims that the incident never occurred, but this is not, without more, a

14  basis for impeaching the victim.  While petitioner alleges that after he was released from prison

15  in 2003, he investigated and "reenact[ed]" the incident, his purported findings do not have much

16  impeachment value, however, as they do not preclude his having closed the window on her arm

17  and going into reverse at least to some degree.  Thus, even if petitioner's re-enactment could be

18  considered in the instant petition, it does show that the victim lied in her TRO application or at

19  trial.

20         Second, petitioner claims that the victim lied in her TRO application that petitioner

21  upset their children at the day-care center on one occasion in August 1998.  Petitioner relies on

22  the declaration of one employee that there had been no problem that day.  Besides the fact the

23  incident could have occurred without the employee witnessing it, the victim never testified

24  about the incident at trial, so there was no testimony for trial counsel to impeach.  Third,

25  petitioner contends that the victim stated in her TRO application that petitioner threatened to

26  kill her in November 1997 if she called the police again to have him arrested "again," when in

27  fact he had never been arrested before.  The victim did not testify at the trial, nor was there any

28  other evidence suggesting, that petitioner had previously been arrested.  As a result there was no

United States District Court
For the Northern District of California

trial testimony to impeach on this point.

In his amended petition of September 3, 2003, petitioner argued that trial counsel should have impeached the victim on two additional grounds – that she made a false statement in the family court that petitioner had whipped her, and that she falsely told Anthony Morris that petitioner pushed her down the stairs, which he then reported to the police. These two issues were not exhausted, and petitioner has omitted them from his second amended petition. It is noted, in any event, that they are without merit: there is no evidence that the victim's statement that petitioner whipped her was false other than petitioner's own denial, and the stairs incident was never mentioned at trial so the victim could not be impeached on that point.

Trial counsel reasonably did not attempt to impeach the victim on the matters petitioner suggests, either because they were minor matters that would have made little difference, there was no effective grounds for impeachment, or they concerned matters outside of the victim's trial testimony. Consequently, petitioner did not receive ineffective assistance of counsel in this regard, and the state courts' rejection of this claim was neither an unreasonable application of or contrary to clearly established federal law.

### ii.      Witnesses

Petitioner claims that trial counsel was ineffective in failing to present testimony by several witnesses in his defense. First, he claims that counsel should have presented testimony by Kevin Payne, petitioner's "best friend" and roommate at the time, that petitioner did not see the victim during the month of January 1999. One of the beating incidents occurred on January 16, 1999. Such testimony was very weak alibi evidence. In addition to Payne's bias as petitioner's "best friend," his testimony was so vague as to the time petitioner did not see the victim as to be virtually useless. There is no suggestion that Payne would have testified that he was with petitioner at the time of the beating on January 16. Consequently, trial counsel reasonably chose not to present this testimony, and its absence is unlikely to have made any difference in the verdict in any case.

Petitioner contends that Payne also could have testified that he witnessed jealous rages by the victim and that she had acted aggressively towards petitioner because she was jealous of

his relationship with other women.  Petitioner also claims that his friend, Amerillis Ersery

would have testified that the victim called her and angrily accused her of having an affair with

petitioner.  Trial counsel explained that because Petitioner had refused to testify in his own

defense and to deny that he beat the victim, evidence of her jealousy and bad behavior could

backfire.  (Ex. 2 at 261-62, 285-86).  Specifically, the jury could interpret such evidence as

giving petitioner reasons for retaliating against her violently, namely that he felt that she did not

respect him or that he felt threatened by her (*ibid.*).  Trial counsel's decision not to present such

testimony absent petitioner testifying that he did not beat the victim was a reasonable decision

in light of the risk that the evidence could be used against petitioner.

Petitioner claims that trial counsel should have presented testimony by witnesses that

they never saw injuries on the victim to counter the testimony by several prosecution witnesses

attesting to seeing the injuries.  Petitioner claims that Deanna Avita, his ex-girlfriend, and Mona

Radwin and Karen Hammon, who both worked at the day-care center where the children of

petitioner and the victim attended, could have offered such testimony.  Many of the victim's

injuries, to the stomach, chest, thighs, and arms, would have been covered by clothes,  however.

More importantly, petitioner offers no evidence as to the particular days that these witnesses

saw the victim, however, or that they saw her at the times when her injuries were visible.  In the

absence of such evidence, the fact that two day-care workers and petitioner's ex-girlfriend did

not see those injuries is very unlikely to have made any difference at trial.

Additionally, petitioner argues that trial counsel should have presented the testimony of

Avita that in the course of their relationship of three and a half years, petitioner was not violent

to her or to her children.  The fact that petitioner was not violent to Avita and her children is

weak evidence that he was also not violent in a different relationship with a different person.

Moreover, her testimony would not contradict any of the specific instances of abuse described

by the victim and the injuries seen by the three witnesses.  As a result, Avita's testimony was

not likely to make a difference in the verdict and trial counsel's failure to present it was not

prejudicial.

Petitioner's claim that counsel should have presented the testimony of Margaret

United States District Court

For the Northern District of California

1    Murchan, his therapist, from the amended petition of September 3, 2003 was not exhausted.  In

2    his motion for stay on September 21, 2005, petitioner indicated that he was deleting the claim,

3    and he omitted it from his second amended petition.

4         Trial counsel's not presenting the testimony petitioner describes was reasonable and was

5    not prejudicial because the testimony was very weak and in certain instances could have been

6    used against petitioner.  Consequently, petitioner did not receive ineffective assistance of

7    counsel in this regard, and the state courts' rejection of this claim was neither an unreasonable

8    application of or contrary to clearly established federal law.

9              **iii.        Appellate Counsel**

10        Petitioner claims that appellate counsel was ineffective in raising the foregoing issues on

11   appeal.  Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue

12   requested by defendant.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  The weeding out of

13   weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.

14   *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).  Appellate counsel therefore will

15   frequently remain above an objective standard of competence and have caused his client no

16   prejudice for the same reason--because he declined to raise a weak issue.  *Ibid.*  For the reasons

17   discussed, petitioner's claims of ineffective assistance of counsel are not simply weak, they are

18   without merit.  Consequently, appellate counsel did not render ineffective assistance in failing

19   to raise them, and the state appellate courts' rejection of this claim was not contrary to, or an

20   unreasonable application of, clearly established United States Supreme Court authority.

21             **f.        <u>Prosecutorial Misconduct</u>**

22        Petitioner claims that his due process rights were violated by the prosecution's knowing

23   presentation of false evidence of the TRO that the victim in September 1998, and by appellate

24   counsel's failure to raise this issue on appeal.

25        When a prosecutor obtains a conviction by the use of testimony which he knows or

26   should know is perjured, it has been consistently held that such conviction must be set aside if

27   there is any reasonable likelihood that the testimony could have affected the judgment of the

28   jury.  *See United States v. Agurs*, 427 U.S. 97, 103-07 (1976).  The record is clear that the

prosecution did not knowingly present false evidence of the TRO.  The fact that the victim obtained the TRO is not disputed.  Rather, petitioner contends that the TRO was "false" evidence because the victim allegedly made three false statements in order to obtain the TRO  – that petitioner rolled up the window on her arm, that petitioner upset the children at the day-care center, and that petitioner had been arrested previously.  As discussed above, the prosecutor never presented any evidence of the day-care center incident or of petitioner's being arrested previously, so even if these things never happened, the prosecutor did not falsely present them to the jury.  As to the window incident, petitioner has not established that it was "false," only that he contends it never occurred.  Consequently, petitioner's claim that the prosecutor violated his due process rights by knowingly presenting false evidence fails.  As the claim is without merit, furthermore, appellate counsel did not provide ineffective assistance in failing to raise it on appeal.

Consequently, the state appellate courts' rejection of these claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court authority.

**CONCLUSION**

Petitioner's motion for reconsideration of the order of dismissal (Docket No. 95) of October 21, 2009 is **GRANTED**, and the order of dismissal and accompanying judgment are **VACATED**.  As the order of dismissal is vacated, petitioner's motions for a certificate of appealability on said order (Docket Nos. 96 & 102) are **DENIED** as moot.

The motion to amend the petition (Docket No. 103) is **GRANTED**.  The petition for a writ of habeas corpus is **DENIED**.

//

//

**United States District Court**
For the Northern District of California

1    Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to

2 rule on whether a petitioner is entitled to a certificate of appealability in the same order in

3 which the petition is denied.  Petitioner has failed to make a substantial showing that his claims

4 amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would

5 find this court's denial of his claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484

6 (2000).  Consequently, no certificate of appealability is warranted in this case.

7    The clerk shall enter a new judgment.

8    IT IS SO ORDERED.

9

10 Dated:  May   21  , 2010.                                _____

11                                                          WILLIAM ALSUP
                                                            UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23 G:\PRO-SE\WHA\HC.02\BRYANT942.RUL.wpd

24

25

26

27

28

21